J-S16026-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JUSTIN ALEXANDER DELAUDER | : | |
| | : | |
| Appellant | : | No. 721 MDA 2024 |

Appeal from the Judgment of Sentence Entered April 17, 2024
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0003159-2023

BEFORE:  LAZARUS, P.J., BOWES, J., and LANE, J.

MEMORANDUM BY BOWES, J.:              **FILED: AUGUST 21, 2025**

Justin Alexander Delauder appeals from the aggregate sentence of three to six years in prison arising from his convictions for persons not to possess a firearm, possession of a small amount of marijuana, and tampering with physical evidence.  We affirm.

By way of background, on May 10, 2023, Officer Lucas Frederick of the York City Police Department observed Appellant in public holding a handgun in his right hand shortly after a reported shooting in the nearby area.  In spite of verbal directives given by the officer to drop the weapon, Appellant threw the firearm behind a parked vehicle.  He was apprehended, a small amount of marijuana was recovered from his person, and the Commonwealth charged him with the above offenses.  Appellant was prohibited from possessing firearms due to two previous convictions of possession with intent to deliver a controlled substance ("PWID").

Prior to trial, Appellant filed a motion to dismiss the persons not to possess charge. Therein, he asserted that the statute, 18 Pa.C.S. § 6105, was unconstitutional insofar as it violated his right to bear arms pursuant to the Second Amendment of the United States Constitution and Article I, § 21 of the Pennsylvania Constitution. The Commonwealth was not ordered to submit a written response, and it did not do so. The trial court entered an order denying the motion, relying upon and incorporating a then-recent opinion from the Court of Common Pleas of York County, sitting *en banc*, denying multiple motions to dismiss filed by similarly situated defendants.

The case proceeded to a stipulated non-jury trial, at the conclusion of which Appellant was convicted of all offenses. The trial court later sentenced him as indicated hereinabove. This timely appeal followed. The trial court ordered Appellant to file a statement of errors in accordance with Pa.R.A.P. 1925(b),[1] and Appellant complied. The court authored a responsive Rule 1925(a) opinion, which again appended the *en banc* decision from the court of common pleas.

Appellant presents a single issue for our review:

I.  Did the lower court err in refusing to dismiss [Appellant's] charge under 18 Pa.C.S. § 6105 for violating the United States and Pennsylvania Constitutions where the statute regulates conduct protected by these constitutional provisions and the Commonwealth failed to establish that this restriction is consistent with the Nation's history of firearm regulation?

---

[1] We remind the trial court that it is required to include in its order "the address to which the appellant can mail the Statement." Pa.R.A.P. 1925(b)(3)(iii).

Appellant's brief at 4 (cleaned up).

The constitutionality of a criminal statute "is a question of law for which our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Farmer**, 329 A.3d 449, 451 (Pa.Super. 2024) (citation omitted), *appeal granted*, 44 MAL 2025, 2025 WL 1873446 (Pa. July 8, 2025). Further, in both facial and as-applied challenges, Appellant bears a heavy burden to demonstrate that the law "clearly, palpably, and plainly violates the constitution." **Id**. at 455 n.5 (citation omitted). The Supreme Court of the United States has also stated that "when legislation and the Constitution brush up against each other, a court's task is to seek harmony, not to manufacture conflict." **United States v. Rahimi**, 602 U.S. 680, 701 (2024). Additionally, a facial constitutional attack "is the most difficult challenge to mount successfully, because it requires a defendant to establish that no set of circumstances exists under which the [statute] would be valid." **Id**. at 693 (cleaned up).

Our Crimes Code defines the crime in question as follows:

A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S. § 6105(a)(1). Appellant's prohibition arises from subsection (c), which forbids firearm possession by "[a] person who has been convicted of an offense under . . . The Controlled Substance, Drug, Device and Cosmetic Act,

- 3 -

or any equivalent Federal statute or equivalent statute of any other state, that may be punishable by a term of imprisonment exceeding two years." 18 Pa.C.S. § 6105(c)(2). The parties do not dispute that Appellant's former PWID convictions make him a person not to possess in accordance with the statute.

We first address Appellant's federal constitutional challenge. This claim is premised upon § 6105's purported transgression of the Second Amendment of the United States Constitution, which states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

Before examining Appellant's specific arguments, we briefly summarize the binding case law implicated by this issue. In *New York State Rifle & Pistol Assoc. v. Bruen*, 597 U.S. 1 (2022), the United States Supreme Court ruled unconstitutional a New York law prohibiting persons from carrying handguns for self-defense unless they demonstrated a special need for self-protection distinguishable from that of the general community. In so doing, the Court held that means-end scrutiny, such as strict or intermediate scrutiny, does not apply in the context of analyzing Second Amendment constitutional challenges. Instead, the Court articulated the following two-part test that controls this Court's current review:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's

conduct falls outside the Second Amendment's "unqualified command."

*Id*. at 24 (citation omitted). The Court provided additional guidance as to the second part of the analysis, concerning the tradition of regulating firearms:

> The test that we set forth in [*District of Columbia v.*] *Heller*[, 554 U.S. 570 (2008),] and apply today requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding. In some cases, that inquiry will be fairly straightforward. For instance, when a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment. Likewise, if earlier generations addressed the societal problem, but did so through materially different means, that also could be evidence that a modern regulation is unconstitutional. And if some jurisdictions actually attempted to enact analogous regulations during this timeframe, but those proposals were rejected on constitutional grounds, that rejection surely would provide some probative evidence of unconstitutionality.

*Id*. at 26.

Nevertheless, the Court warned that "[t]o be clear, analogical reasoning under the Second Amendment is neither a regulatory [straitjacket] nor a regulatory blank check. On the one hand, courts should not uphold every modern law that remotely resembles a historical analogue, because doing so risks endorsing outliers that our ancestors would never have accepted." *Id*. at 30. "On the other hand, analogical reasoning requires only that the government identify a well-established and representative historical analogue, not a historical twin. So even if a modern-day regulation is not a dead ringer

for historical precursors, it still may be analogous enough to pass constitutional muster." *Id*.

Two years later, the Supreme Court decided *Rahimi*. There, the Court upheld the defendant's conviction pursuant to 18 U.S.C. § 922(g)(8) for the federal crime of possessing a firearm while subject to a domestic violence restraining order. The Supreme Court additionally clarified and reinforced its application of the test articulated in *Bruen*, specifically the second prong:

> A court must ascertain whether the new law is relevantly similar to laws that our tradition is understood to permit, applying faithfully the balance struck by the founding generation to modern circumstances. Discerning and developing the law in this way is a commonplace task for any lawyer or judge.
>
> **Why and how the regulation burdens the right are central to this inquiry**. For example, if laws at the founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons fall within a permissible category of regulations. Even when a law regulates arms-bearing for a permissible reason, though, it may not be compatible with the right if it does so to an extent beyond what was done at the founding. And when a challenged regulation does not precisely match its historical precursors, it still may be analogous enough to pass constitutional muster. The law must comport with the principles underlying the Second Amendment, but it need not be a "dead ringer" or a "historical twin."

*Rahimi*, 602 U.S. at 692 (cleaned up, emphasis added). Notably, the Court concluded that "[**a**]**n individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment**." *Id*. at 702 (emphasis added).

Critically, this Court recently interpreted both **Bruen** and **Rahimi** in **Commonwealth v. Randolph**, \_\_\_ A.3d \_\_\_, 2025 WL _____ (Pa.Super. 2025), which concerned the very same issue Appellant raises now. There, Randolph, like Appellant, challenged the constitutionality of § 6105, both as applied and facially, when he had two prior convictions for PWID. The **Randolph** Court began its review by detailing the pertinent federal and Pennsylvania cases implicated by this claim. In conducting the two-step analysis called for in **Bruen**, we first concluded that the plain text of the Second Amendment covered the firearm prohibition in question, despite Randolph's felony background. He thus was one of "the people" presumptively protected thereby. **See Randolph**, 2025 WL _____ at *\_ (citing **Farmer**, 329 A.3d at 455).

However, we determined that Randolph's challenge failed with respect to the second prong, concerning the requirement that the Commonwealth justify § 6105 by demonstrating its compatibility with the nation's historical tradition of firearm regulation. Specifically, we found that, in accordance with **Rahimi**, the prohibition was constitutional as applied to Appellant because he was an "individual found by a court to pose a credible threat to the physical safety of another," and thus could be temporarily disarmed without violating the Second Amendment. **Id**. at *\_. We noted, *inter alia*, that the holding was in line with a multitude of federal decisions that came to the same conclusion when wrestling with this question post-**Rahimi**. **Id**. at *\_.

Additionally, this Court determined that the result was consistent with the admonition from the United States Supreme Court that its recent decisions analyzing the Second Amendment, such as *Heller* and its progeny, "should [not] be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons[.]" *Heller*, 554 U.S. at 626; *see also McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) ("We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as prohibitions on the possession of firearms by felons and the mentally ill[.] . . . We repeat those assurances here." (cleaned up)). Finally, the *Randolph* Court concluded that since Randolph's as-applied challenge fell short, his facial attack likewise failed because he had not shown that "no set of circumstances exists under which the statute would be valid." *See Randolph*, 2025 WL _____ at *_ (citing *Rahimi*, 602 U.S. at 693).

With this background in mind, we summarize Appellant's arguments asserting § 6105's unconstitutionality in light of the Second Amendment.[2] He first contends that despite his felony PWID convictions, he is one of the "the people" protected by the Second Amendment, thus fulfilling step one of *Bruen*. *See* Appellant's brief at 13-19. With regard to the second component of *Bruen*, Appellant notes that the Commonwealth did not file any response

---

[2] We do so cognizant of the fact that *Randolph* was only recently decided by this Court, and therefore neither Appellant nor the trial court had the benefit of that opinion.

to his underlying motion to dismiss. *Id*. at 19-20. He takes issue with the fact that, instead, the trial court denied relief pursuant to an *en banc* decision previously entered as to other similarly-situated defendants. *Id*. at 20. Appellant criticizes the opinion for failing to cite any specific regulations promulgated before the twentieth century that disarmed other individuals based on prior convictions. *Id*. Appellant further attacks the reasoning of that opinion, which highlighted that felonies in the founding era could be punished by death and, by extension, disarmament, as a "materially different means" of regulating problematic conduct. *Id*. at 21-22. Finally, he discusses *Rahimi*, acknowledging its language allowing for temporarily disarming a person who poses a credible threat to others, but distinguishes it on the basis that he "has never been adjudicated to be dangerous or threatening." *Id*. at 24.

In its Rule 1925(a) opinion, the trial court cited the *en banc* decision upon which it originally relied in denying Appellant's motion to dismiss. Importantly, it recognized the *Rahimi* holding that the government may disarm certain individuals that credibly threaten others. *See* Trial Court Opinion, 7/17/24, at 6. Based on this language, the court stated that it found PWID "to be an inherently dangerous and violent crime," bolstering its determination that Appellant may be lawfully precluded from possessing a firearm via § 6105 in the same way the federal government could disarm Rahimi. *Id*.

Upon review, including the binding and apposite decision in *Randolph*, we find that Appellant's constitutional challenge premised on the Second Amendment fails. Randolph presented an identical claim of unconstitutionality and had the same underlying prohibitive conviction as Appellant, namely PWID. Despite Randolph's contention that PWID was not a "crime of violence," we nevertheless found that § 6105 can be lawfully applied to him because the court there could, and did, conclude that he presented a credible threat to others based upon that conviction. *See Randolph*, 2025 WL _____ at *_. As noted, the trial court here specifically determined that Appellant had prior convictions of "inherently dangerous and violent crime[s]," placing him in the class of persons contemplated within *Rahimi*. *See* Trial Court Opinion, 7/17/24, at 6. Hence, this matter is materially the same as *Randolph*, and requires that we likewise reject Appellant's constitutional challenges premised upon the Second Amendment.

Furthermore, concerning Appellant's complaint that the trial court did not cite a "specific regulation" in the *en banc* opinion wherein the government historically disarmed drug traffickers, that was not required. As we recounted in *Randolph*, "[i]t is clear that 'historical analogues' are close enough to show that § 6105 has a historically rooted 'how' and 'why' of restricting firearm possession. No 'dead ringer' is required." *See Randolph*, 2025 WL _____ at *_ (citing *Bruen*, 597 U.S. at 26). A multitude of judicial opinions have already reviewed and discussed prior laws and regulations prohibiting certain

- 10 -

classes of people from possessing firearms based on society's concern as to their future conduct, even if those persons have not been convicted of a prior offense. *See*, *e.g.*, *United States v. Jackson*, 110 F.4th 1120, 1126-27 (8th Cir. 2024) (discussing colonial regulations that prohibited certain classes of persons from owning firearms, such as those who fail to swear a loyalty oath); *see also Commonwealth v. Jenkins*, 328 A.3d 1076, 1092 (Pa.Super. 2024) (highlighting firearms prohibitions relating to sureties and vagrants), *appeal granted*, 18 MAL 2025, 2025 WL 1874050 (Pa. July 8, 2025). In short, § 6105 does not run afoul of the Second Amendment either facially or as applied to Appellant under the facts of this case.

However, that does not end our inquiry. Beyond the Second Amendment challenge, Appellant asserts that § 6105 is also in violation of the Pennsylvania Constitution, specifically the provision stating: "The right of the citizens to bear arms in defence of themselves and the State shall not be questioned." Pa. Const. art. I, § 21.

In his brief, Appellant concedes that this Court has held that "Article I, [§] 21 . . . does not provide greater protection of the right to bear arms than the Second Amendment." Appellant's brief at 30 (citing *Commonwealth v. Mead*, 326 A.3d 1006 (Pa.Super. 2024)). He nonetheless asserts that the *Mead* Court performed a "truncated" analysis that goes against the case law of other jurisdictions that found their state constitutions afforded greater protection concerning firearms rights. *Id*. at 30-34. Appellant further

contends that in light of **Bruen**, "[i]t is time for reexamination of the interplay between the Second Amendment and Article I, [§] 21[.]". Appellant's reply brief at 13.

**Mead** is binding authority decided post-**Bruen**, and dispositive as to Appellant's claim. Since the Pennsylvania Constitution affords no greater protection to the citizens than that provided by the Second Amendment, Appellant's alternative challenge fails for the reasons already discussed above. No relief is due.

In sum, we have no cause to disturb Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 08/21/2025